IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**MANDY DELLI-VENERI**, Personal
Representative for the Estate of Randy S.
Shull,

    Plaintiff,

v.

**WEST VIRGINIA DIVISION OF
CORRECTIONS AND REHABILITATION
MICHAEL FLANAGAN**, in his individual
official capacity as a correctional officer
employed at Tygart Valley Regional Jail and
Correctional Facility; and **BRITT ADKINS**,
his individual official capacity as a correctional
officer employed at Tygart Valley Regional Jail
and Correctional Facility

    Defendants,

Civil Action No. 2:19-cv-00689
Honorable Joseph R. Goodwin

### DEFENDANT WEST VIRGINIA DIVISION OF CORRECTIONS AND REHABILITATION'S MEMORANDUM OF LAW IN SUPPORT OF <u>MOTION FOR SUMMARY JUDGMENT</u>

COMES NOW Defendant, West Virginia Division of Corrections and Rehabilitation ("WVDCR"), by and through counsel, William E. Murray, Esquire, Mark J. McGhee, and the law firm of Anspach Meeks Ellenberger, and files its memorandum of law in support of its Motion for Summary Judgment. This Defendant states as follows:

**I.    STATEMENT OF FACTS**

This civil action concerns allegations that the death of Randy S. Shull, while an inmate at the Tygart Valley Regional Jail, was the fault of the WVDCR and/or its former employees,

1

Defendants Michael Flanagan and Britt Adkins, and that damages should be awarded to his Estate. [ECF No. 1-1]. On July 26, 2017, Randy S. Shull, a 63-year-old man, was arrested and held as a pretrial detainee for the alleged murder of his girlfriend. Id.; (*Exhibit 1*, *"Offender Information Report"*).

During intake, PrimeCare Medical of West Virginia ("PrimeCare") staff documented that Mr. Shull had a history of alcohol abuse. (*Exhibit 2*). After completing booking and medical screening, Mr. Shull was housed in B-pod, Section 5, Cell 6, with a cell mate (Charles Lewis). [ECF No. 1-1]; (*Exhibit 3*, *Statement of Charles Lewis*). Based on established policy, Mr. Shull was placed in pre-trial general population on a 30-minute special watch, and to be observed for alcohol detox. [ECF No. 1-1, at ¶¶ 12-13]; (*Exhibit 2; Exhibit 4, deposition of D.E. Bittinger at p. 18, 19, 23, 27, 28, 29, 30*). Mr. Shull was monitored by PrimeCare nurses for alcohol detox and by correctional officers as to the 30-minute watch. (*Exhibit 5 at p. 29, 30*). At no time did any PrimeCare nurse note that Mr. Shull showed signs of distress or was experiencing effects from alcohol withdrawal. (*Exhibit 2*). Importantly, there is no evidence in the record that, to the extent any 30-minute check was missed, that the missed check caused or contributed to Mr. Shull's death.

Defendants Flanagan and Adkins were present the evening of July 26, 2017, and the morning of July 27, 2017, and noted their observations of Mr. Shull. (*Exhibit 5, deposition of Britt Adkins at p. 30-31 and 52 to 66*). Defendant Adkins who conducted checks on Mr. Shull from Midnight to 4:54 a.m. did not observe anything to raise a concern about his health. *Id*. at p. 57-58.[1]

---

[1] Deposition of Defendant Britt Adkins, at p. 59 - 60
Q: Did he at any time, when you walked by his door, knock on the door and tell you that he was having difficulties and needed any kind of assistance?
**A: No, sir. Most of them sleep by then.**
Q: He wasn't yelling, screaming, doing anything like that during the night?
**A: No, sir.**
Q: Did you see any outward visible signs from him that he was shaking, convulsing, having seizures, anything like that?
**A: No, sir.**

Mr. Shull's cell and section was equipped with a call box that permitted communication with an officer in the tower. (*Exhibit 3; Exhibit 4 at p. 36-37*). On July 26, Mr. Shull used the call box at approximately 10:37 p.m. to request his sister's phone number. (*Exhibit 6 [2]*, *deposition of Michael Flanagan, at p. 46-48, 51-54*). At around 5:50 a.m. on July 27, 2017, Mr. Shull's cell mate used the call box to report to the tower that Mr. Shull appeared unresponsive. (*Exhibit 3*).

Immediately after Mr. Shull's cell mate reported his concern, officers rushed to provide treatment in an effort to revive Mr. Shull using CPR and a request for EMS assistance was made via 911. (*Exhibit 7, death investigation records*). Mr. Shull was pronounced dead at 6:51 a.m. on July 27, 2017. *Id*. The medical examiner, Dr. James Kaplan, found his death to be caused by alcohol withdrawal. *Id.*

Notably, Plaintiff relies solely on the Medical Examiner's Report from Dr. Kaplan for the allegation that Mr. Shull died as a result of alcohol withdraw, and Plaintiff has not disclosed another medical expert. Dr. Kaplan can make no finding that Mr. Shull displayed signs and/or symptoms of alcohol withdraw that would have been observable and <u>recognizable</u> to a Correctional Officer as a sign of distress. *Id*. Rather his findings are based on a post-mortem examination.

One of Defendants' expert witnesses, David L. Stuart MD., has identified the symptoms of alcohol withdraw recognized by The Clinical Institute of Withdrawal Assessment for Alcohol

---

Q: Were you ever put on notice by his cellmate after midnight that Mr. Shull was having any difficulty?
**A: No, sir. The only report I got from his cellmate was when he called up to the tower and said that he was being unresponsive.**
Q: And when you went into the tower at approximately 0454, after that time did Mr. Shull ever buzz the intercom and tell you he was having any problem?
**A: No, sir.**

[2] Mandy Delli-Verneri, Personal Representative of the Estate, verified that the communication on the intercom was her father. The recording states the following:
    Tower: What do you want?
    Mr. Shull: I was trying to get out to get the guard in here to see if he could get my sister's phone number for me.
    Tower: Can't do that. I told you have to wait until 8:00 when the booking officer comes in and can get it for you. That is the only person allowed in the personals in the whole jail

(CIWA-Ar). (*Exhibit 8*).The record is devoid of evidence or testimony that Mr. Shull displayed any of the 10 symptoms that would indicate withdrawal. Ultimately, Dr. Stuart opined that "[m]ultiple etiologies are possible for his [Mr. Shull's] demise, but I do not believe that alcohol withdrawal was the inciting cause of his death based on the fact that he did not exhibit any of the classical signs and symptoms, progressing from mild to the more serious moderate and severe stages." *Id*.

While Dr. Stuart excluded alcohol withdrawal, he did not offer an opinion as to the cause of Mr. Shull's death. However, another expert retained by the Defendants, Dr. Francisco J. Diaz, did offer an opinion as to the cause of Mr. Shull's death. (*Exhibit 9)*. Specifically, Dr. Diaz opined that Mr. Shull died a sudden and natural death as a result of an enlarged heart with evidence of prior episodes of lack of oxygen coupled with pulmonary emphysema. *Id.* Dr. Diaz further opined "that constellation of cardio-pulmonary findings is enough to induce sudden death and this observer would have certified his death as such." *Id.*

The lack of evidence supporting Dr. Kaplan's conclusion, in contrast to the weight of the record evidence, including the expert opinions of Dr. Stuart and Dr. Diaz, makes it clear it is of no consequence whether the correctional officers made the 30 minutes "checks" or not. The record indicates that Mr. Shull did <u>not</u> die of alcohol withdrawal and, if he did, he certainly never displayed any visible signs of suffering alcohol withdrawal which triggered a legal duty breached by the individual Defendants.

Plaintiff's theory against Defendants Flanagan and Adkins is that they showed deliberate indifference to the medical needs of Mr. Shull, and if they had more closely monitored Mr. Shull his death could have been avoided. [ECF No. 1-1, ¶ 39, 49]. Plaintiff alleges the WVDCR did not

4

properly supervise the correctional officers at Tygart Valley Regional Jail, including Defendants Flanagan and Adkins. [ECF No. 1-1, ¶ 39, 50].

Plaintiff's seeks damages for purported violations of Mr. Shull's federal and state constitutional rights pursuant to 42 U.S.C. § 1983 and the West Virginia Constitution, Article III, Sections 1, 5, and 10. *Id.* at ¶¶ 39, 41, and 50. A liability claim is also asserted against the WVDCR for negligent supervision of Defendants Flanagan and Adkins, and other correctional officers present. *Id.* at ¶ 55.

Summary judgment is appropriate because: (1) the WVDCR has immunity from this suit; and (2) no act or omission by Defendants Flanagan or Atkins caused the death of Mr. Shull. Therefore, even if Plaintiff could prove negligent supervisor by the WVDCR, it would not be a proximate cause of Mr. Shull's death.

## II. STANDARD OF REVIEW

Summary judgment is governed by Rule 56 of the *Federal Rules of Civil Procedure*, which provides, in pertinent part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). Moreover, the rule also provides, in relevant part, as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e). In discussing this standard, the U.S. Supreme Court stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential

> to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)).

"In assessing a motion for summary judgment all justifiable inferences must be drawn in favor of the nonmoving party for 'credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts.'" *Drewitt v. Pratt*, 999 F.2d 774, 778 (4th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). Hence, "the court 'must perform a dual inquiry into the genuineness and materiality of any purported factual issues.'" *Drewitt* at 778 (quoting *Ross v. Communications Satellite Corp*., 759 F.2d 355, 364 (4th Cir. 1985)).

### III. ARGUMENTS

**A. Liability under 42 U. S. C. § 1983.**

Plaintiff's Amended Complaint asserts three causes of action against the Defendants *collectively*, including Count One seeking damages pursuant to 42 U.S.C. § 1983. It is well settled, that "§1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); *Conley v. Ryan*, 92 F. Supp. 3d 502, 524 (S.D. W. Va. 2015).

In order to state a claim for relief under 42 U.S.C. § 1983, an aggrieved party must sufficiently allege that he or she was injured by "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a "person" acting "under color of state law." *See* 42 U.S.C. § 1983; *See Monell v. Dept. of Social Servs*., 436 U.S. 658, 691 (1978). Claims

under 42 U.S.C. § 1983 are specifically directed at "persons." *Will v. Mich. Dept. of State Police,* 491 U.S. 58, 60 (1989).

The Supreme Court of the United States has found that "**neither a State nor its officials acting in their official capacities are 'persons' under §1983**." *Id.* at 71. "While the Supreme Court treats municipalities as suable "persons" under Section 1983, state departments and agencies, and state officers and agents in their official capacities sued for damages, are considered to be 'arm[s] of the state' and are not deemed 'persons.'" *Smoot v. Green,* 2013 U.S. Dist. LEXIS 156887 (S.D. W.Va. Nov. 1, 2013). Therefore, as the West Virginia Division of Corrections and Rehabilitation is an agency of the State of West Virginia, it is not a "person" under 42 U.S.C. § 1983, therefore is not subject to suit under that statute. *See Will* 491 U.S. at 58; *Langley v. Huntington Police Dep't*, Civil Action No. 3:17-cv-03520, 2018 U.S. Dist. LEXIS 17845, at *49-50 (S.D. W. Va. Jan. 9, 2018).[3] Furthermore, pursuant to the Eleventh Amendment, the power of the federal judiciary does not extend to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9, 10 S.Ct. 504, 33 L.Ed. 842 (1980); See also *Will*, supra, 491 U.S. at 66, 109 S.Ct. at 2309 (Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution); *Kinder v. PrimeCare Med., Inc*., 2014 U.S. Dist. LEXIS 182965, 2015 WL 1276748, * 2 (S.D.W.Va. March 19, 2015) (dismissing WRJ

---

[3] It is well recognized that the WVDCR is an arm of the State and is not a "person" within the meaning of Section 1983. See *Rauch v. West Virginia Division of Corrections*, 2014 U.S. Dist. LEXIS 101507, 2014 WL 3732123 (S.D.W.Va. July 25, 2014)(J. Copenhaver)(**WVDOC is not a "person" for purpose of Section 1983**); *Berry v. Rubenstein*, 2008 U.S. Dist. LEXIS 34782, 2008 WL 1899907, * 2 (S.D.W.Va. April 25, 2008)(J. Faber)("**WVDOC is an arm of the state and is therefore immune from suit under the Eleventh Amendment**"); *Lewis v. Western Regional Jail*, 2012 U.S. Dist. LEXIS 121135, 2012 WL 3670393, * 5 (S.D.W.Va. July 24, 2012)(**finding that WRJ was not a "person" subject to suit under Section 1983**); *Webb v. Parsons*, 2011 U.S. Dist. LEXIS 56148, 2011 WL 2076419 (S.D.W.Va. May 6, 2011)(**finding that the West Virginia Regional Jail Authority, an agency of the State of West Virginia, is immune from suit under the Eleventh Amendment**); *Roach v. Burke*, 825 F. Supp. 116, 117 (N.D.W.Va. 1993)(**stating that the West Virginia Regional Jail Authority is not a "person" under Section 1983**).

based on Eleventh Amendment grounds). Further, there is no *respondeat superior* liability pursuant to 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

Because Plaintiff is unable to assert claims against this Defendant for violation of rights under 42 U.S.C. § 1983, the Estate is barred entirely from recovering against the WVDCR for any alleged violation of the United States Constitution. Accordingly, all claims asserted against the WVDCR for violations of the United States Constitution must be dismissed as a matter of law.

### B. West Virginia State Constitutional Claims Are Not Available to the Plaintiff for money damages.

Count Two of the Amended Complaint asserts "State Constitutional Tort" claims against the defendants. West Virginia law, announced and followed in the decisions of the Southern District of West Virginia, holds that the West Virginia Constitution does not create an independent cause of action for money damages. Plaintiff alleges that the WVDCR deprived her decedent's rights protected by the West Virginia Constitution. Plaintiff specifically identifies Article 3 §§ 1, 5, 10 of the West Virginia Constitution. As the Court is aware, the United States Constitution is complemented by 42 U.S.C. § 1983, whereby an individual is provided with a private cause of action to seek monetary relief. The West Virginia Constitution is complemented by no such statute.

"[A] violation of Article III, §5 of the West Virginia Constitution does not independently give rise to claims for money damages." *Sanders v. Jones*, No. 3:15-cv-14196, 2016 U.S. Dist. LEXIS 81063, 2016 WL 3512247, at *2 (S.D.W. Va. Jun. 22, 2016) (Chambers, C.J.); *Howard v. Ballard*, 2015 U.S. Dist. LEXIS 41225 (S.D. W. Va. Mar. 30, 2015) *citing McMillion-Tolliver v. Kowalsk*i, No. 2:13-CV-29533, 2014 U.S. Dist. LEXIS 44365, 2014 WL 1329790, at *2 (S.D.W. Va. Apr. 1, 2014); *Smoot v. Green*, No. CIV.A. 2:13-10148, 2013 U.S. Dist. LEXIS 156887, 2013 WL 5918753, at *4 (S.D. W. Va. Nov. 1, 2013). In this civil action, the Plaintiff has not requested

injunctive relief or habeas corpus relief. It is a claim solely for money damages. Therefore, there is no independent cause of action for money damages based upon violations of the West Virginia Constitution.

> The Supreme Court of Appeals of West Virginia has held that the remedies available to a plaintiff "brutalized by state agents while in jail or prison" consist of the following:
>
>> (a) A reduction in the extent of his confinement or his time of confinement;
>> (b) Injunctive relief, and subsequent enforcement by contempt proceedings, including but not limited to, prohibiting the use of physical force as punishment, requiring psychological testing of guards, and ordering guards discharged if at a hearing they are proved to have abused inmates;
>> (c) A federal cause of action authorized by 42 U.S.C. § 1983; and
>> (d) A civil action in tort.
>
> *Harrah v. Leverette*, 165 W. Va. 665, 271 S.E.2d 322, 324 (W. Va. 1980). The *Harrah* court did not include a cause of action under the state constitution for money damages among the remedies it listed. Without an independent statute authorizing money damages for violations of the West Virginia Constitution, the plaintiff's claim must fail.

*McMillion-Tolliver v. Kowalski*, 2014 U.S. Dist. LEXIS 44365 (S.D. W. Va. Apr. 1, 2014).

As the case law on this issue is well settled, there is no separate, independent cause of action for money damages based upon violations of the West Virginia Constitution. Therefore, Plaintiff's claims based on violations of the West Virginia Constitution should be dismissed as a matter of law.

### C. Qualified Immunity

### i. Qualified Immunity Standard

Count Three of the Amended Complaint asserts that the WVDCR "through its agents and employees * * * negligently supervised Defendants Flanagan and Adkins, as well as the other correctional guards * * * and adopted a custom, policy, and practice of encouraging its correctional

9

guards to falsify records, to lie about the actions of inmates, to conduct cell checks without leaving the tower, and to turn off the intercom during cell extractions so that no recording is made."

The WVDCR, under the facts of this case, has a right to qualified immunity which bars all claims and requires judgment to be entered on its behalf. As a rule, "Officers are entitled to qualified immunity under 42 U.S.C. §1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S.Ct. 577, 589. "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he [was] doing'" was unlawful." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Wesby*, 138 S.Ct at 590. Both the Supreme Court of the United States and the United States Court of Appeals for the Fourth Circuit have noted that,"[t]his demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

The United States Supreme Court has emphasized and clarified the importance of addressing the question of whether a right was "clearly established" at the correct level of specificity. *Id*. Because of the imprecise nature of determinations that officers must make concerning constitutional rights, "officers will often find it difficult to know" how general standards apply in "the precise situation encountered." *Id.* Thus, the Court has stressed the need to identify a case where an officer acting under similar circumstances was held to have violated clearly established law. While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate. Of course, there can be rare 'obvious cases' where the unlawfulness of the officer's conduct is sufficiently clear even though

existing precedent does not address similar circumstances. But a body of relevant case law is usually necessary to 'clearly establish' the answer[.] *Id*. at 591 (quotations omitted).

Because the very purpose of qualified immunity is to foster efficient and productive governance free from the chilling effect of unfounded litigation, a ruling should be made as early as possible in the process. *Henry v. Purnell*, 619 F.3d 323, 334 (4th Cir. 2010) (*reversed on other grounds, Henry v. Purnell*, 652 F.3d 524 (4th Cir. 2011) (citing *Saucier,* 533 U.S. at 204)). For this reason, the United States Supreme Court has noted that, where the existence of a rights violation is highly fact-bound and difficult to determine, a court should first assume − without deciding - that there was one, and proceed directly to determining whether the right was clearly established at the time of the incident, since this may eliminate the need for lengthy and expensive fact finding by a jury. *See Goins v. James*, 189 W.Va. 634, 638, 433 S.E.2d 572, 576 (1993); *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009).

Even if an officer's actions could be found sufficiently unreasonable to violate the United States Constitution, as alleged by plaintiff, a court should nonetheless rule in his favor on qualified immunity grounds if it would not be clear to a reasonable officer that his conduct would do so. *City of St. Albans v. Botkins,* 228 W.Va. 393, 399, 718 S.E.2d 863, 868 (2011); *Wilson v. Layne*, 526 U.S. 603 (1999). The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that "every reasonable official" would know. *Wesby*, at 589-590 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

To demonstrate a clearly established right was infringed upon, a plaintiff "must do more than allege that an abstract right has been violated. Instead, the plaintiff must make a 'particularized showing' that a 'reasonable official would understand that what he is doing violated that right' or that 'in the light of preexisting law the unlawfulness' of the action was 'apparent.'" *A.B.*, 766 S.E.2d at 776 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In West Virginia, "broad categories of duties such as training, supervision, and retention easily fall within the category of discretionary governmental functions that ordinarily entitle a defendant to qualified immunity." *Id*. Barring a showing by Plaintiff that WVDOCR violated a "clearly established right or law" with respect to supervision of its officers, Defendant WVDOCR is entitled to qualified immunity on claims involving these discretionary acts.

In this case, Plaintiff has failed to identify any clearly established law that would have established the legal principle that the WVDCR, in its supervision of officers present when Mr. Shull was at the Tygart Valley Regional Jail, violated a clearly established law. See generally *Covey v. Assessor of Ohio County*, 777 F.3d 186, 196 (4th Cir. W. Va. 2015). Failure to identify any clearly established law allegedly violated by Defendant WVDCR is fatal to the Plaintiff's claims of negligence.

### ii. Discretionary Conduct

The negligence claim against the WVDCR is asserted in terms of negligent supervision. The WVDCR's supervision of correctional officers involves inherently discretionary acts for which the State enjoys immunity. *Cochran v. W. Va. Reg'l Jail & Corr. Facility Auth.,* No. 3:13-10176, 2014 U.S. Dist. LEXIS 89893, (S.D. W. Va. July 2, 2014). Further, correctional officers' functions "are *broadly* characterized as discretionary, requiring the use of discretionary judgments and decisions." *A. B. at* 509. Therefore, all conduct at issue in this case required the exercise of

discretion. Because Plaintiff did not identify a single, specific law or regulation violated by Defendant WVDCR, Plaintiff cannot make a "particularized showing" that WVDCR violated a clearly established right. See *Id.*; See also *Searls v. W. Virginia Reg'l Jail*, No. CV 3:15-9133, 2016 WL 4698547, at *4 (S.D.W. Va. Sept. 7, 2016) ("Here, as it was in *A.B.*, Plaintiff's claim attacks a discretionary function and has not alleged that the Authority has violated any clearly established statutory or constitutional right. Thus, the [Agency] is entitled to immunity from Plaintiff's negligence claim.").

Importantly, negligence is not sufficient to state a "clearly established law." *Lavender v. West Virginia Regional jail and Correctional Facility Authority, et al.,* 2008 U.S. Dist. LEXIS 8162 (S.D. W.Va. 2008). "…[T]he doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act…" *A. B. at* 505,764. Accordingly, Plaintiff's bare allegations of negligence cannot overcome qualified immunity. Therefore, the WVDCR is entitled to qualified immunity and dismissal of this matter.

**D. There is no causal relationship between the acts or omissions of Defendants Flanagan and Adkins and the death of Mr. Shull.**

In addition to the arguments stated above, summary judgment for the WVDCR is also proper because Plaintiff can produce no evidence to establish that there is a causal relationship between the alleged failure to conduct the 30-minute checks by WVDCR employees and Mr. Shull's death. No evidence exists that Defendants were put on notice of an acute health risk to Mr. Shull.

There is simply no causal link between the alleged conduct of Defendants Britt Adkins and Michael Flanagan. Unfortunately, Mr. Shull died regardless of whether the 30-minutes checks were conducted or not. Therefore, Plaintiff's allegations that Mr. Shull died due to the actions, or

13

the lack thereof, of Defendants is not supported by, and is refuted by, material evidence. Accordingly, this Court should grant summary judgment for Defendant WVDCR on all of Plaintiff's claims against it as there was no conduct by its employees which was a proximate cause of Mr. Shull's death.

### E. CONCLUSION

**WHEREFORE**, based on the foregoing, Defendant West Virginia Division of Corrections and Rehabilitation respectfully prays this Honorable Court **GRANT** its Motion for Summary Judgment, dismiss all claims by Plaintiff asserted against this Defendant in this matter, and grant such other relief as the Court deems just and proper.

**WEST VIRGINIA DIVISION OF CORRECTIONS AND REHABILITATION,**

**By Counsel**

*/s/ William E. Murray*
William E. Murray (WVSB #2693)
Mark J. McGhee (WVSB #9016)
ANSPACH MEEKS ELLENBERGER LLP
900 Lee Street East, Suite 1700
Charleston, West Virginia 25301
304-205-8063 - telephone
304-205-8062 – facsimile
wmurray@anspachlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**MANDY DELLI-VENERI, Personal Representative for the Estate of Randy S. Shull,**

    Plaintiff,

v.

**WEST VIRGINIA DIVISION OF CORRECTIONS AND REHABILITATION MICHAEL FLANAGAN, in his individual official capacity as a correctional officer employed at Tygart Valley Regional Jail and Correctional Facility; and BRITT ADKINS, his individual official capacity as a correctional officer employed at Tygart Valley Regional Jail and Correctional Facility**

    Defendants,

Civil Action No. 2:19-cv-00689
Honorable Joseph R. Goodwin

## CERTIFICATE OF SERVICE

I, William E. Murray, counsel for Defendant, the West Virginia Division of Corrections and Rehabilitation, do hereby certify that I electronically filed the foregoing **"DEFENDANT WEST VIRGINIA DIVISION OF CORRECTIONS AND REHABILITATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT"** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Lonnie C. Simmons (WVSB #3406)
DIPIERO SIMMONS McGINLEY & BASTRESS, PLLC
P. O. Box 1631
Charleston, West Virginia 25326
and
William T. Nestor (WVSB #9862)
WILLIAM T. NESTOR, PLLC
1062 Harrison Avenue
Elkins, West Virginia 26241


Julie Meeks Greco (WVSB #7484))
Pullin Fowler Flanagan Brown & Poe, PLLC
JamesMark Building
901 Quarrier Street
Charleston, WV  25301
*Counsel for Defendant Michael Flanagan*


John Fuller, Esquire
Bailey & Wyant
500 Virginia Street East, Suite 600
Charleston, WV  25301
*Counsel for Defendant Britt Adkins*


  /s/ William E. Murray_____
**William E. Murray (WVSB #2693)**
*ANSPACH MEEKS ELLENBERGER LLP*
Post Office Box 11866
Charleston, West Virginia 25339
304-205-8063 - telephone
304-205-8062 – facsimile
wmurray@anspachlaw.com